UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-11732-RWZ

DOUGLAS YOUNG

v.

SARAH ALGER, P.C. and SARAH ALGER

MEMORANDUM OF DECISION

November 27, 2012

ZOBEL, D.J.

Plaintiff Douglas Young ("Young") sues defendants, the professional corporation named Sarah Alger, P.C. and the natural person named Sarah Alger (collectively "Alger"), for legal malpractice. Now before the court are Alger's motion for summary judgment and motion in limine regarding the measure of damages.

I. **Background**

Beginning in December 2003, Alger represented Young in the purchase of certain property located at 21 Brewster Road in Nantucket, Massachusetts. The lots neighboring that property were owned by William Tornovish, Jr. ("Tornovish") and his wife Deborah. According to Young, Alger repeatedly informed him that the Tornovishes and their lots had no rights whatsoever over the property Young was purchasing. Young closed his purchase on April 15, 2005.

Beginning shortly thereafter, in the summer of 2005, Young hired attorney Paul Jensen ("Jensen") to help him subdivide his new property. At about the same time, Young had several conversations with Tornovish in which Tornovish asserted that he had a right-of-way over part of Young's new property. Young admits that he understood by September 2006 that Tornovish was claiming such a right-of-way.

In October 2007, Jensen performed a title examination on Young's new property and found that Tornovish did indeed have a right-of-way over it. Jensen testified at his deposition that he probably finished his title examination on October 4 or 5, 2007, and probably reviewed and compiled it in the first two weeks of that month. Young has submitted an affidavit that Jensen told him the results of his title search in "mid to late October." Docket # 17, Ex. 1 ("Young Affidavit"), ¶ 6.

Young then contacted attorney Alison Zeiff ("Zeiff"), an employee of Sarah Alger, P.C. According to Young, Zeiff disagreed with Jensen's assessment, "continued to represent that no right to pass existed in favor of Tornovish," and told Young that "she would make the situation right." Young Affidavit, ¶¶ 8, 9. Zeiff then represented Young in trying to arrange a land swap deal with Tornovish to resolve the problem. However, that deal fell through. Zeiff ceased representing Young in early 2009.

Because of the right-of-way, Young was not able to subdivide his new property into five lots as he had planned. Instead, he was only able to break it into three lots. He has sold two of those lots and retains the third.

## II.     Summary Judgment

### A. Legal Standard

Summary judgment will be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court must view the record in the light most favorable to the nonmoving party, and draw all justifiable inferences in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### B. Analysis

Alger argues that Young's complaint is time-barred. In Massachusetts, a legal malpractice suit must be commenced within three years after the cause of action accrues. Mass. Gen. Laws ch. 260, § 4. A cause of action for legal malpractice accrues when the client "discovers, or reasonably should discover, the malpractice" and has also suffered some "appreciable harm." Cantu v. St. Paul Cos., 514 N.E.2d 666, 667, 669 (Mass. 1987).

The Supreme Judicial Court considered a suit much like Young's in Murphy v. Smith, 579 N.E.2d 165 (Mass. 1991). There, the plaintiffs purchased a lot of land as to which their attorney certified good record title. Three years later, the plaintiffs received a letter from their neighbors' attorney alleging that the neighbors were the true owners of the lot. The court held that when the plaintiffs received that letter, they had sufficient notice of the facts at issue to allow them to discover the alleged malpractice. Id. at 167. In a later case discussing Murphy, the court clarified that the plaintiffs suffered appreciable harm from the cloud on their title even before the neighbors' claim of

3

ownership was finally resolved. See Lyons v. Nutt, 763 N.E.2d 1065, 1070 (Mass. 2002).

Like the plaintiffs' claim in Murphy, Young's claim accrued when Tornovish notified him that there was an easement on his new property. At that point, Young reasonably should have known that he had suffered appreciable harm from Alger's alleged malpractice. Young's claim thus apparently accrued in the summer of 2005, and by September 2006 at the latest.

Young's suit was not filed until October 11, 2010, more than three years after his claim accrued. However, Young argues that the statute of limitations was tolled until early 2009 by the continuing representation doctrine.

The continuing representation doctrine "tolls the statute of limitations in legal malpractice actions where the attorney in question continues to represent the plaintiff's interests in the matter in question." Murphy, 579 N.E.2d at 167. It expresses the principle that "a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which services are rendered." Cantu, 514 N.E.2d at 669 (quoting Greene v. Greene, 436 N.E.2d 496, 500 (N.Y. 1982)). However, the doctrine does not apply where the plaintiff actually knows that he has suffered appreciable harm from his attorney's errors. Lyons, 763 N.E.2d at 1070. In such cases, "there is no 'innocent reliance which the continued representation doctrine seeks to protect.'" Id. (quoting Cantu, 514 N.E.2d at 669).

Young affirms in his affidavit that Zeiff, working for Alger, represented him in

4

connection with the land at issue from 2005 until early 2009. Thus, if the continuing representation doctrine applies, it would toll the statute of limitations until early 2009 and Young's complaint would be timely.

Alger argues that the continuing representation does not apply because Young actually knew he had suffered appreciable harm from the alleged malpractice as soon as Tornovish told him there was an easement. But although that conversation gave Young sufficient notice to discover the malpractice, it did not give him actual knowledge thereof. See Lyons, 763 N.E.2d at 1070 ("Although the clients in the Murphy case reasonably should have known that they suffered appreciable harm at the hands of their attorney, they had no actual knowledge to that effect.").

Alger also contends that Young did in fact know he had suffered from the alleged malpractice when Jensen informed him of the easement. But two disputed factual issues prevent summary judgment on that ground. First, it is not clear whether Jensen informed Young of the easement before or after October 11, 2007. Jensen's deposition states that he probably finished his title search on October 4 or 5, and probably examined and compiled it in the first two weeks of that month. Young's affidavit, by contrast, states that he learned of the easement from Jensen in mid- to late October. If Young did not have actual knowledge of the easement before October 11, 2007—three years before the complaint was filed—then the continuing representation doctrine would save his suit.[1]

---

[1] Alger argues that Jensen's knowledge as of the time he completed the title search should be imputed to Young. See Levin v. Berley, 728 F.2d 551, 553 (1st Cir. 1984). Even if so, the difference between Jensen's and Young's testimony raises a

Second, it is not clear whether Zeiff's subsequent statements prevented Young from having actual knowledge of Alger's malpractice. Young's affidavit affirms that when he informed Zeiff that Jensen had discovered an easement, Zeiff told him "she would make the situation right" and that "no right to pass existed in favor of Tornovish." Young Affidavit, ¶¶ 8,9. Zeiff's statements may have misled Young into believing that the easement was invalid or that the claimed easement would cause him no appreciable harm. In similar cases, courts have found the client lacked actual knowledge. See Rosen Constr. Ventures v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 364 F.3d 399 (1st Cir. 2004) (no actual knowledge where law firm continued to defend its position in ongoing litigation); Spilios v. Cohen, 647 N.E.2d 1218, 1220 (Mass. App. Ct. 1995) (no actual knowledge where attorney persuaded client he was prepared for trial despite client's doubts); cf. Murphy, 579 N.E.2d at 168 (continuing representation doctrine applies where attorney told client the problem "did not present a cause for concern and that he would take care of it"); Eck v. Kellem, 748 N.E.2d 1047 (Mass. App. Ct. 2001) (claim did not accrue where defendant persuaded plaintiff and plaintiff's subsequent counsel that the contract he drafted would perform as promised despite ongoing litigation). But see Feddersen v. Garvey, 427 F.3d 108, 114 (actual knowledge despite defendants' assertions they had done nothing wrong where plaintiff had filed a false affidavit prepared by defendants, had hired two new law firms regarding the matter, had been informed by one new firm that he had a "serious problem" and a "potential malpractice claim," and had made a substantial settlement

---

triable issue of fact as to when Jensen actually knew of the easement.

6

offer in the underlying case as a result).

Given these factual disputes, the court cannot conclude as a matter of law that Young's suit is time-barred. Therefore, the motion for summary judgment is denied.

### III.     Calculation of Damages

Alger also moves for a ruling in limine on how the damages in this action should be calculated. As the alleged legal malpractice is based on negligent misrepresentation, the applicable measure of damages is that established in Danca v. Taunton Sav. Bank, 429 N.E.2d 1129 (Mass. 1982). If he proves his case, Young can recover "damages equal to the difference between the value of what [he] received and the purchase price plus any other pecuniary loss suffered as a consequence of [his] reliance on the misrepresentation." Id. at 1134.

Young's brief in opposition is so full of typographical and grammatical errors that it is difficult to understand. To the extent it asserts that the difference between the value of what Young received and the purchase price should be calculated based on the value of the property in 2007, it is incorrect. Likewise, to the extent it asserts that the value of the property should be calculated as if the right-of-way did not exist and the property could be subdivided into five lots, it is also incorrect. The difference between the purchase price and the value received should be calculated using the value of the property, given the existing right-of-way, at the time the transaction closed on April 15, 2005. In addition, if Young proves his case, he will be entitled to damages for any losses (whether before or after the transaction closed) caused by reliance on Alger's alleged misrepresentation. As alleged in the complaint, such losses might include money spent in attempting to subdivide the property and money spent attempting to

swap land with the Tornovishes. They might also include pecuniary loss occurring as a result of delay in subdividing the property, provided Young can show that delay was caused by reliance on Alger's alleged misrepresentation.

## IV.     Conclusion

Alger's motion for summary judgment (Docket # 14) is DENIED. Its motion in limine for a ruling as to the applicable measure of damages (Docket # 12) is ALLOWED to the extent described above. Damages shall be calculated by the difference between the value of the land at the time of purchase (given the existing right-of-way) and the purchase price, plus any other pecuniary loss suffered as a consequence of reliance on the misrepresentation.


|   November 27, 2012   |   /s/Rya W. Zobel   |
|---|---|
|   DATE   |   RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE   |